UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>DAVID ENRIQUE MEZA; TAYLOR MARIE LANGSTON,<br><br>         Defendant. | Case No.:  15cr3175 JM<br><br>**ORDER ON MOTIONS IN LIMINE** |

  Pending before the court are the motions in limine of Defendant David Enrique Meza ("Meza"), (Doc. No. 97), Defendant Taylor Marie Langston ("Langston"), (Doc. No. 100), and the United States of America ("the Government"), (Doc. No. 98).  The court heard argument on the motions on January 23, 2017.  This order addresses each party's motions in turn.

## MEZA'S MOTIONS IN LIMINE[1]

**1. To exclude agents' opinions and commentary.**

  Meza argues that the opinions and commentary of Task Force Officer Jim Brown and FBI Special Agent Eric Van Houten, who interviewed Meza for four hours outside

---

[1] Langston moves to join all of Meza's motions in limine.  (Doc. No. 99.)

1

1  his apartment on June 4, 2015, are irrelevant and hearsay.  In response, the Government
2  notes that it does not intend to use some of the commentary referenced by Meza, but
3  argues that the remaining dialogue is relevant, as it puts Meza's changing statements in
4  context, and is not offered for the truth of the matter asserted.
5        The Government cites <u>Dubria v. Smith</u>, 224 F.3d 995, 1001–02 (9th Cir. 2000), a
6  habeas case in which the Ninth Circuit allowed similar commentary, holding that such
7  statements placed the defendant's answers in context and were not the sort of statements
8  that would carry "any special aura of reliability."  Furthermore, according to the court,
9  "even if it was error to admit the tapes and transcripts without redacting the detective's
10 statements, any error was cured by the judge's two cautionary instructions": (1) "The
11 questions are only pertinent as they may explain what the answers themselves are.  You
12 are not to assume as true anything that [the detective] says in his questions.  The
13 questions are only pertinent as they give meaning to the answers"; and (2) "Again I want
14 to caution you, too, you are not to consider any of the statements that [the detective]
15 makes for the truth of the matters asserted in those statements.  Those are just questions
16 in the form of statements.  They are not to be considered for the truth, they are only to be
17 considered as how they may give meaning to the answers." <u>Id.</u> at 1102.  Given these
18 warnings, "[a]ny impression that the jury may have had that it could consider [the
19 detective's] statements to be true was specifically and timely corrected by the trial
20 judge." <u>Id.</u>
21       Without knowing the particular statements that the Government intends to offer
22 and the context for those statements, the court cannot rule on this motion at this time.
23 But the court is not prepared to categorically exclude the agents' opinions and
24 commentary as Meza suggests.  Should the court admit some or all of these statements, it
25 will instruct the jury as discussed in <u>Dubria</u>.
26       In sum, the court defers ruling on Meza's first motion in limine.
27 ///
28 ///

2

15cr3175 JM

**2.   To exclude statements of a non-testifying codefendant.**
**3.   To exclude Langston's testimonial statements.**

The court addresses these motions together, as they involve substantially overlapping facts and law.

In his second motion in limine, Meza cites <u>Bruton v. United States</u>, 391 U.S. 123 (1968), and <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987), in objecting to the introduction of any portion of either of Langston's two statements, given on June 4, 2015, and February 27, 2016, that mentions him by name or clearly implicates him. Separately, in his third motion in limine, Meza seeks to exclude Langston's statements under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

In response, the Government states that it does not intend to introduce in its case in chief "testimony by a law enforcement officer about what Langston said" during the February 2016 interview. "If, however, Langston testifies or offers testimony or other evidence inconsistent with what she said on [that date], the Government will cross-examine her about that statement, and/or call a witness to testify to any inconsistency."

The Government does intend to introduce portions of Langston's June 2015 statement in its case in chief. Those statements can be summarized as follows:

>(1) Langston and Meza were with a man named Joe in Tijuana on the night of the murder;
>
>(2) Langston believed Meza was an accountant/bookkeeper for several wealthy clients, including the victim, Jake Merendino, and she believed Merendino and Meza shared a "father-son" relationship;
>
>(3) Langston believed Meza also did translating for Merendino, who was buying a condominium and moving to Mexico;
>
>(4) Merendino bought Meza a motorcycle;
>
>(5) Langston was never told that Meza was having a relationship with anyone else;
>
>(6) Meza supported her financially;

    (7) Langston believed Merendino had a lot of stock and wrote a will leaving everything to Meza; and

    (8) The first time Langston saw Merendino's will was when the will was taken from a bag that had been in Mexico, copied, and sent to Texas.

  The Government notes that only statement number (1) will be offered against Meza (and Langston).

  Regarding the Bruton issue, the Government argues that a "right to confrontation" issue exists only where the statement in question is "powerfully incriminating," Bruton, 391 U.S. at 135, or "incriminating on its face," Richardson, 481 U.S. at 208, which is not the case here.  The court agrees.  Langston's statement is not powerfully incriminating—there is nothing about the alleged murder or Meza instructing Langston to provide a false statement or in any other way obstruct justice—and "does not incriminate [Meza] unless linked with other evidence introduced at trial . . . ."  United States v. Hoac, 990 F.2d 1099, 1105 (9th Cir. 1993).  Thus, the statement does not violate Meza's Sixth Amendment rights under Bruton and Richardson.  See id.

  Regarding the Crawford issue, the Government argues that Crawford makes clear that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  541 U.S. at 59 n.9.  The Government contends that because the statement is not offered for its truth, but rather its falsity, there is no Crawford problem.[2]  And though the Government does not explicitly make this argument, the court notes that "co-conspirator statements are not testimonial and therefore beyond the compass of Crawford's holding."  United States v. Allen, 425 F.3d 1231, 1235 (9th Cir. 2005); see also United States v. Bridgeforth, 441 F.3d 864, 869

---

[2] The Government also argues that the statement is not hearsay for the same reason, and even if it were, is admissible as the statement of a co-conspirator under Federal Rule of Evidence 801(d)(2)(E).

n.1 (9th Cir. 2006) (noting that the admissibility of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E) survives Crawford).

The court agrees with the Government's position and finds that Crawford does not bar Langston's statement, because it is not offered for the truth of the matter asserted, or, alternatively, because it is a statement of a co-conspirator in furtherance of obstructing justice.

In sum, because Bruton, Crawford, and their progeny do not require excluding Langston's statement, the court denies Meza's second and third motions in limine.

### 4. To exclude prostitution evidence unrelated to Meza and Merendino.
### 7. To exclude evidence of pornography.

Once again, the court addresses these motions together, as the issues involved substantially overlap.

As an initial matter, the court notes that these motions are partially moot. In response to Meza's motions in limine, the Government agreed "to severely limit the evidence of prostitution and pornography it intends to introduce"—specifically to evidence of prostitution between Meza and Merendino, "except in very limited circumstances where necessary to avoid a misunderstanding of the facts, and where probative of Meza's financial motive to intentionally target rich older men."

Those very limited circumstances fall into three categories.

First, the Government still intends to introduce a May 2013 "online advertisement which Meza published at or around the time he met Merendino" because Meza's bare statement to investigators that they met "online" is insufficient to show the true nature of the relationship and misleading given the number of ways two people can meet online in the internet era.

Second, the Government wants to introduce a portion of a YouTube video that shows Meza appearing under the name Mario Romo—the same name he uses in the May 2013 online advertisement—in which he states that he is straight, but does "gay stuff" for "fun" and "easy money."  The Government contends that "these admissions are highly

probative of Meza's relationship with Merendino, his financial motive for engaging in gay sex with Merendino, and the two separate lives which he cultivated until their imminent collision in May of 2015."

Third, the Government wants a witness to testify to meeting Meza through his role as a prostitute to "explain why Meza would ever discuss with this witness his relationship with Merendino." And along with introducing those discussions between Meza and the witness about Merendino (after Merendino died), the Government also wants to introduce Meza's statements to the witness regarding his plans to continue "escorting" after Merendino's death.

The court will permit the Government to introduce the online advertisement. It is relevant to the Government's theory that Meza entered into a relationship with Merendino for financial gain, and its relevance is not substantially outweighed by a risk of unfair prejudice or confusion of the issues. See Fed. R. Evid. 403. It is also not excludable as an "other act" under Federal Rule of Evidence 404(b). It simply provides context to Merendino's introduction to Meza.

The court will permit the Government to introduce its proposed video clips—with minor redactions—for the same reason, as well. Because the Government proposes to introduce evidence of prostitution, but not pornography, the Government is directed to redact any visual or aural reference to the adult entertainment production company conducting the interview. Once excised of those references, the video, like the advertisement, is relevant to support the Government's theory that Meza's relationship with Merendino was simply transactional in nature, and in fact Meza was a straight man in a heterosexual relationship who engaged in gay sex strictly for fun and profit.

Finally, the court defers its ruling on whether the Government may introduce evidence regarding Meza's discussions with the unspecified witness. The court anticipates that some of the discussions that touch on Merendino may be relevant and admissible. The court has doubts, however, as to the admissibility of evidence regarding how the witness met Meza and Meza's plans to keep escorting after Merendino's death.

The court is skeptical of the Government's claim that such evidence is relevant or "admissible under Rule 404(b) to prove Meza's financial motive to murder Merendino."

### 5. To admit other acts by Merendino.

Without specifying the emails he seeks to introduce, Meza moves to admit Merendino's "other acts," including emails and statements, to show that Merendino was involved with other men.

It is difficult for the court to assess the admissibility of this evidence at the present time. For one thing, it is not clear that Meza was aware of these emails, or that Meza knew Merendino had other relationships. If Meza knew of the emails, or if the emails corroborate Meza's knowledge of Merendino's other relationships, they may be relevant. If not, it is unclear what chain of inferences stemming from the emails makes it more or less probable that Meza committed the charged crimes. For another, the court will have to assess each statement to determine whether it fits any exception to the hearsay rule. Finally, the emails may or may not be admissible under Rule 806, depending on what evidence the Government offers in its case in chief.

Given these uncertainties, the court will defer ruling on this motion unless and until these issues arise at trial.

### 6. To admit testimony of handwriting expert.

At the January 23, 2017, hearing, the Government stated that it did not anticipate any objection to Meza offering the testimony of a handwriting expert. Accordingly, this motion is moot.

### 8. To exclude prior convictions.

The Government does not intend to introduce Meza's prior convictions for prostitution or domestic violence in its case in chief, making this motion moot. If the Government seeks to introduce such evidence to contradict arguments by Meza that raise issues of law abidingness or peacefulness, the court will rule on this matter at that time.

///

///

**9.      To exclude evidence unlawfully obtained by grand jury subpoena.**

Finally, Meza seeks to exclude jailhouse emails and recordings that the Government recently turned over in discovery because, he claims, they were unlawfully obtained by grand jury subpoena.

In response, the Government argues that: (1) Meza does not have standing to challenge the process used because he has no right to privacy in those communications; (2) Meza is speculating that the Government obtained those communications by way of grand jury subpoena, when in fact these types of communications are routinely collected and shared within the Department of Justice; (3) the grand jury could indeed be investigating new crimes; and (4) regardless, suppression is not the appropriate remedy.

Without more information, the court cannot decide this motion at this time, and therefore defers ruling. Absent a more specific showing that such evidence was improperly obtained, however, the court anticipates denying this motion.

## LANGSTON'S MOTIONS IN LIMINE

**1.      To sever defendants.**

Though filed as part of her motions in limine, Langston's first motion is in fact for severance, which is addressed to the trial court's discretion. United States v. Seifert, 648 F.2d 557, 563 (9th Cir. 1980). Langston moves to sever under Federal Rules of Criminal Procedure 8(b) and 14.

### Rule 8(b)

Langston first argues that she was improperly joined with Meza because she and Meza did not participate in the same series of acts or transactions. Rule 8(b) governs the joinder of charges against multiple defendants. Rule 8(b) provides that two defendants may be joined in the indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b).

"The term transaction is interpreted flexibly, and whether a series exists depends on whether there is a logical relationship between the transactions. . . . A logical relationship is typically shown by the existence of a common plan, scheme, or conspiracy." United States v. Vasquez-Velasco, 15 F.3d 833, 843–44 (9th Cir. 1994). "Rule 8(b) should be construed broadly in favor of initial joinder," id., and if properly joined, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together," as joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts,'" Zafiro v. United States, 506 U.S. 534, 537 (1993) (quoting Richardson, 481 U.S. at 209).

The Ninth Circuit's decision in United States v. Felix-Gutierrez, 940 F.2d 1200 (9th Cir. 1991), is instructive here. In that case, Felix-Gutierrez, who did not participate in the murder of a DEA agent, was indicted as an accessory after the fact and tried along with two codefendants who did participate in the murder. Id. at 1208–09. Felix-Gutierrez was a member of the same drug trafficking organization as his codefendants, and had helped yet another individual escape to Costa Rica after the murder. After his conviction, Felix-Gutierrez appealed under Rule 8(b). The Ninth Circuit held that because evidence of participation in the organization was necessary to prove the offenses charged against each of the three defendants, the charges involved substantially overlapping evidence, and this, combined with the fact that the events occurred during a brief time span and included many of the same participants, supported joinder of the charges. Id.; see also United States v. Molina, 789 F. Supp. 106, 109 (E.D.N.Y. 1992), aff'd, 48 F.3d 1213 (2d Cir. 1994) (holding joinder proper where the "obstruction charge arose out of" the conspiracy to distribute heroin charge); United States v. Gullia, 304 F. Supp. 30, 32 (W.D. Pa. 1969) (denying motion to sever for misjoinder in part because in order to convict one defendant for obstruction, government would have to re-prove the underlying embezzlement case against the other defendants).

Given this authority, the court finds that Langston and Meza were properly joined. As noted, Rule 8(b) is to be construed broadly. Langston and Meza are alleged to have

participated in the same series of acts, and there will be substantial overlap in the evidence required to prove the charges against each of them. See Vasquez-Velasco, 15 F.3d at 844. Consequently, the court denies Langston's motion to sever under Rule 8.

Whether Langston has a Rule 14 severance argument is a separate question, however, which the court turns to next.

**Rule 14**

"Rule 14 recognizes that even when counts are properly joined under Rule 8(b), severance of the counts may be appropriate to avert prejudice to a defendant." Vasquez-Velasco, 15 F.3d at 845. "Rule 14 sets a high standard for a showing of prejudice. The party seeking reversal of the denial of a motion to sever bears the burden of proving such clear, manifest,' or 'undue' prejudice from the joint trial, that it violates one of his substantive rights, so that the prejudice is of 'such a magnitude that the defendant was denied a fair trial." Id. at 845–46 (quoting Felix-Gutierrez, 940 F.2d at 1209).

The Ninth Circuit has developed a four-factor test for district courts to consider in deciding a motion to sever under Rule 14. See United States v. Hernandez-Orellana, 539 F.3d 994, 1001 (9th Cir. 2008). Those factors are: "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id.

Langston first argues in general fashion that a joint trial "would greatly prejudice" her. According to Langston, she would be "incredibly prejudiced by the parade of horribles which the government intends to unleash" on Meza. A substantial portion of Langston's argument focuses on evidence that the Government no longer intends to offer, however: Meza's history of pornography and prostitution. The court does not believe

1  that admission of this evidence, especially in the more limited manner the Government
2  now proposes, would impair Langston's right to a fair trial.  Moreover, Langston's
3  concern that, after this evidence comes out, "she won't be able to establish that [Meza]
4  used [and] lied to her like he did the victim," should be eased by the knowledge that the
5  Government will presumably attempt to do that for her—in fact, that is a central theme in
6  its theory of the case.

7  Second, Langston argues that she and Meza intend to offer mutually exclusive
8  defenses.  "To be entitled to severance on the basis of mutually antagonistic defenses, a
9  defendant must show that the core of the codefendant's defense is so irreconcilable with
10 the core of his own defense that the acceptance of the codefendant's theory by the jury
11 precludes acquittal of the defendant."  United States v. Throckmorton, 87 F.3d 1069,
12 1072 (9th Cir. 1996).  Langston cannot make this showing.  If the jury accepts Meza's
13 theory of defense, that would not "preclude[] acquittal of" Langston.  Rather, it would
14 likely make her acquittal much more probable.

15 Third, Langston argues that without severance she will have no right to call Meza
16 to testify.  That is true.  The test, though, is whether (1) she would call Meza as a witness
17 in a severed trial, (2) Meza would actually testify, and (3) Meza's testimony would be
18 favorable.  United States v. Seifert, 648 F.2d 557, 563 (9th Cir. 1980).

19 With regard to the first prong of the Seifert test, the court is willing to accept
20 Langston's assertion that she would call Meza to testify in a severed trial.

21 As to the second prong, Langston argues that Meza would testify because the
22 Government could grant Meza immunity under 18 U.S.C. § 6003(b)(1) or the court could
23 compel such a grant.  But "for a defendant to compel use immunity the defendant must
24 show that: (1) the defense witness's testimony was relevant; and (2) either (a) the
25 prosecution intentionally caused the defense witness to invoke the Fifth Amendment right
26 against self-incrimination with the purpose of distorting the fact-finding process; or (b)
27 the prosecution granted immunity to a government witness in order to obtain that
28 witness's testimony, but denied immunity to a defense witness whose testimony would

have directly contradicted that of the government witness, with the effect of so distorting the fact-finding process that the defendant was denied his due process right to a fundamentally fair trial." United States v. Straub, 538 F.3d 1147, 1162 (9th Cir. 2008). Again, Langston cannot make this showing. And because Meza is unlikely to voluntarily testify at her trial, she fails to satisfy the second prong of the Seifert test.

Finally, as to Seifert's third prong, Langston "must show more than that the offered testimony would benefit [her]; [s]he must show that [Meza's] testimony is substantially exculpatory in order to succeed. A showing that the testimony would merely contradict portions of the government's proof is insufficient." United States v. Mariscal, 939 F.2d 884, 886 (9th Cir. 1991) (internal citations and quotations omitted). Langston offers no reason to believe that Meza's testimony would be "substantially exculpatory." She therefore fails to satisfy Seifert's third prong, as well.

In short, Langston's inability to call Meza at a joint trial does not justify severance.

Fourth, Langston argues that Bruton requires severance. For the same reasons as discussed with respect to Meza's motions in limine, the court disagrees. There do not appear to be any statements by Meza that may be offered against Langston which are "powerfully incriminating," Bruton, 391 U.S. at 135, "incriminating on [their] face," Richardson, 481 U.S. at 208, or which "expressly implicate[]" Langston in the charges against her, id.

Finally, Langston argues that without severance, the jury may find her guilty by association, violating her due process rights. Langston thinks that the jury "cannot reasonably be expected to compartmentalize the evidence as it relates to [her] alone" given Meza's "covert activities involving gay porn, prostitution and (arguably) murder . . . ." The court rejects this argument. Obstruction of justice and lying to a federal officer are not easily confused with murder. With respect to concerns that Langston will be convicted on the conspiracy count based on Meza's acts rather than her own, as the Government notes, "it is Langston, and not Meza, who personally committed the crimes of obstruction and false statements. Thus, there is no risk that the jury will be confused

about which defendant actually took action to obstruct justice and lie, and which defendant only conspired to do so." Furthermore, the court may give limiting instructions, and "[a] defendant seeking severance based on the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge." United States v. Joetzki, 952 F.2d 1090, 1094 (9th Cir. 1991). There is no reason to believe limiting instructions would be insufficient here.

In sum, severance is not justified for any of the reasons Langston proposes. Appling the four-factor test of Hernandez-Orellana, 539 F.3d at 1001, the court finds that: (1) the jury "may reasonably be expected to collate and appraise the individual evidence against" Meza and Langston; (2) the court can effectively instruct the jury on "the limited purposes for which certain evidence may be used"; (3) "the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror"; and (4) Langston cannot show, "with some particularity, a risk that the joint trial would "compromise a specific trial right" or "prevent the jury from making a reliable judgment about [her] guilt or innocence." See id.

For these reasons, the court denies Langston's motion to sever.

**2. To introduce statements by Meza and Langston that Meza instructed Langston to provide an alibi.**

Langston does not identify which statements she would like to introduce, the witness or witnesses who will testify to them, or what hearsay exception applies. Without more information, the court must defer ruling on this motion.

**3. To introduce Meza's domestic violence against Langston.**

In just two sentences, Langston moves to admit Meza's misdemeanor conviction for domestic violence. She claims that his conviction shows a pattern of domestic violence against her and is admissible under Rule 404(b). Langston does not explain how or why Meza's prior conviction is admissible, or even relevant, to the charges against her. The court addressed these insufficiencies with Langston's counsel at oral argument and

granted Langston leave to file supplemental briefing.  As such, the court defers ruling on this motion at this time.

### 4. To exclude the codefendant's statements.

In this motion, Langston "joins the co-defendant's points and authorities cited in his In Limine Motion number (2) in seeking to exclude Mr. Meza's statements . . . ."  To the extent that Langston is seeking to exclude Meza's statements on the same grounds as Meza seeks to exclude Langston's statements, the court denies this motion for the reasons previously discussed: there do not appear to be any statements by Meza that would be offered against Langston that are "powerfully incriminating," Bruton, 391 U.S. at 135, "incriminating on [their] face," Richardson, 481 U.S. at 208, which "expressly implicate[]" Langston in the charges against her, id., or which contravene the rule set forth in Crawford.

### 5. To exclude unduly prejudicial photos.

Finally, Langston moves to exclude all photographs depicting how Merendino looked after he was murdered, arguing that they "will only serve to inflame the passions of the jurors and may actually make some sick to their stomachs."  The Government responds by stating that it only "intends to use a limited number of pictures to fairly and accurately depict the facts and circumstances of the murder and the nature of the injuries sustained by the victim."  It "will not seek to admit unnecessarily gruesome or horrifying photographs."

The court intends to serve as a gatekeeper in excluding photographs that are unnecessarily gruesome or cumulative.  Accordingly, the court will defer ruling on the admissibility of particular photographs until the Government specifies which photographs it intends to introduce.

## THE GOVERNMENT'S MOTIONS IN LIMINE

Although not technically requests to limit or exclude evidence, "the Government seeks "an affirmative ruling on the admissibility of particular evidence."

1. **Foreign documents, including business records from Baja Title, Notary Public Office Number Six, and Condominio Palacio del Mar, as well as official records (videos) from Mexico's Transportation and Communications Department.**

The Government intends to introduce certain foreign documents, which it has disclosed to the defense as they have become available. Neither Meza nor Langston opposed the Government's motion in their papers, and the parties stated at oral argument that they did not anticipate any issues regarding this request. Accordingly, this motion is moot.

2. **Statements of the victim.**

The Government argues that statements made by Merendino before his death are admissible under the state of mind exception to the rule against hearsay. Again, neither Meza nor Langston opposed this portion of the Government's motion in their papers. At oral argument, Meza's counsel acknowledged that many of the statements may indeed be admissible under Rule 803(3)'s state of mind exception. But counsel maintained that some assertions embedded within those statements may express belief from memory and are therefore excluded by Rule 803(3). The court directed the parties to work together to identify those statements, and the court will rule on their admissibility at that point.

3. **Evidence of Meza's prostitution and double life.**

This request is covered by the Government's response to Meza's motions to limit this evidence. It is therefore moot.

///
///
///
///
///
///
///
///

# CONCLUSION

For the foregoing reasons, the court:

- Defers ruling on Meza's motion in limine one (1).
- Denies Meza's motion in limine two (2).
- Denies Meza's motion in limine three (3).
- Denies in part, grants in part, and recognizes as moot Meza's motions in limine four (4) and seven (7), as discussed above.
- Defers ruling on Meza's motion in limine five (5).
- Recognizes as moot Meza's motion in limine six (6).
- Defers ruling on Meza's motion in limine eight (8).
- Defers ruling on Meza's motion in limine nine (9).

- Denies Langston's motion to sever (listed as motion in limine one (1)).
- Defers ruling on Langston's motion in limine two (2).
- Defers ruling on Langston's motion in limine three (3).
- Denies Langston's motion in limine four (4).
- Defers ruling on Langston's motion in limine five (5).

- Recognizes as moot the Government's motion in limine one (1).
- Defers ruling on the Government's motion in limine two (2).
- Recognizes as moot the Government's motion in limine three (3).

IT IS SO ORDERED.

DATED: January 30, 2017

JEFFREY T. MILLER
United States District Judge